UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JERRY WHITTIKER, *et al.*, <br><br>          Plaintiffs, <br><br>    vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al.*, <br><br>          Defendants. | CASE NO. 1:08-CV-00300-DDD <br><br> JUDGE DOWD <br><br> MAGISTRATE JUDGE GALLAS |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT MANLEY, DEAS, KOCHALSKI, LLC FOR JUDGMENT ON THE PLEADINGS**

**I.     INTRODUCTION**

Plaintiff Valeria Kimball commenced this action against Defendant Manley, Deas, Kochalski, LLC alleging claims under the Fair Debt Collections Practices Act ("FDCPA") and Ohio's Pattern of Corrupt Activities Act ("Ohio RICO").  Underlying Plaintiff's claims is the central allegation that Manley, Deas, Kochalski, in representing Defendant Deutsche Bank National Trust Co. in a prior lawsuit against Plaintiff, misrepresented to the court the factual and legal bases for that litigation.

It is ironic, therefore, that in bringing these claims, Plaintiff or her counsel has misrepresented Plaintiff's standing to pursue a Fair Debt Collection Practices Act claim and this Court's jurisdiction.  Plaintiff's Amended Complaint conspicuously omits any allegation that the mortgage debt that was the subject of the original litigation was incurred primarily for personal, family, or household purposes.  This is because, as Plaintiff admitted at the initial status conference, that mortgage debt was for a *rental* property owned by Plaintiff.  Because such

commercial debt does not fall within the protections of the FDCPA, this Court lacks subject matter jurisdiction over Plaintiff's claims.

In an earlier motion to dismiss, Defendant Reisenfeld & Associates pointed out that Plaintiffs had failed to allege that any debts involved in the underlying actions were "created primarily for personal, family or household purposes" so as to bring their claims within the FDCPA.  *See* Reisenfeld Motion to Dismiss, ECF No. 33, at pgs 4-5.  In response, Plaintiffs requested and were granted leave to amend their complaint to address this issue.  *See* Pls. Motion for Leave, ECF No. 50; Order Granting Pls. Motion for Leave, ECF No. 52.  In their Amended Complaint, Plaintiffs included allegations that the mortgage debts of Plaintiffs Whittiker and Stepanek were "created primarily for personal, family or household purposes."  Am. Comp., ¶¶ 19, 31.  Kimball, though, makes no such allegation.  Because the FDCPA applies only to debts created "primarily for personal, family or household purposes," and because Kimball's alleged FDCPA claim is the sole basis for subject matter jurisdiction, Kimball has failed to establish that this Court has subject matter jurisdiction over her claims.

In addition, the Court lacks subject matter jurisdiction over Kimball's Ohio RICO and Receiver claims pursuant to the *Rooker-Feldman* doctrine.  In these claims Kimball asks the Court to reverse the judgments rendered in the state foreclosure proceedings against her and the putative class by returning title of her property to her, and titles of the properties of the putative class to the putative class members.  Federal district courts lack subject matter jurisdiction over "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-284, 125 S. Ct. 1517, 1521-22, 161 L. Ed.2d 454 (2005).  Accordingly, this Court does not

have jurisdiction to review the legal basis for the judgments rendered in the state foreclosure actions.

In the alternative, Plaintiff's claims under the FDCPA and Ohio RICO are not supported by law.  First, FDCPA claims must be brought "within one-year from the date on which the [alleged] violation occur[ed]." 15 U.S.C. § 1692k(d).  Kimball alleges Manley, Deas, Kochalski, LLC and Deutsche Bank National Trust Company violated the FDCPA when the prior state foreclosure action was filed on May 25, 2006.  The present suit was filed on February 7, 2008.  Accordingly, Kimball's claim is barred by the FDCPA statute of limitations.

Moreover, Kimball's Ohio RICO claim is barred because the allegations contained in her Complaint negate the existence of predicate acts of "corrupt activity."  Thus, the Court lacks subject matter jurisdiction over Kimball's claims.  Alternatively, Count I of Kimball's Amended Complaint is barred by the statute of limitations, and Kimball has failed to state a claim upon which this Court can grant relief under Counts II and III of the Amended Complaint.  Therefore, the Court should grant judgment on the pleadings in favor of Manley, Deas, Kochalski, LLC.

## II.     FACTUAL BACKGROUND

Plaintiff Valeria Kimball filed this suit against Deutsche Bank National Trust Company ("Deutsche Bank") and Manley, Deas, Kochalski, LLC ("MDK") alleging violations of the Federal Fair Debt Collections Practices Act, Ohio's RICO statute, and requesting appointment of a receiver under Ohio Revised Code Section 2735.01.[1]  Her claims are based upon Deutsche

---

[1] Two other Plaintiffs have asserted claims, separately, against Deutsche Bank, Reisenfeld & Associates and Weltman, Weinberg & Reis Co.  Kimball is the only Plaintiff asserting any claim against MDK.  Because Plaintiffs' Whittiker and Stepanek have not alleged any harm caused by this Defendant they have asserted no claim against Manley, Deas, Kochalski, LLC.  *Thompson v. Board of Ed.*, 709 F.2d 1200, 1204 (6th Cir. 1983)("[A] plaintiff cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury.")

Bank, as the holder of a mortgage given by Kimball, bringing a state foreclosure action against her.

MDK, as counsel for Deutsche Bank, filed a foreclosure action against Kimball on May 25, 2005. *See* Am. Comp., ¶ 26. Kimball now claims that Deutsche Bank perpetrated deceptive and unauthorized conduct during the state foreclosure action, and that MDK served as a vehicle through which Deutsche Bank allegedly committed such conduct. *See* Am. Comp., ¶¶ 2-5. Specifically, Kimball asserts that MDK and Deutsche Bank filed the foreclosure action against her in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and Ohio's Pattern of Corrupt Activities Act ("Ohio RICO"), R.C. § 2923.32. *See* Am. Comp., ¶¶ 1, 5-6.

Under the FDCPA, Kimball asserts that Defendants misrepresented the character, amount, and legal status of her debt, and threatened to take action they could not legally take in the foreclosure action. *See* Am. Comp., ¶¶ 36-38. Under Ohio RICO, Kimball asserts that MDK and Deutsche Bank violated Section 2921.03 of the Ohio Revised Code by "knowingly filing complaints alleging DBNTC's [Deutsche Bank] ownership of promissory notes and mortgages when in fact it did not own the notes or mortgages, and by knowingly filing complaints as trustee in reckless disregard of the fact that Defendant DBNTC [Deutsche Bank] was not authorized to engage in such activities as trustee in Ohio." *See* Am. Comp., ¶¶ 40-48. Both claims arise out of the state foreclosure proceedings against Kimball.

III.    **LAW AND ANALYSIS**

A.    **Legal Standard.**

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Courts review motions for judgment on the pleadings under the same standard as

motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Mixon v. Ohio* 193 F.3d 389, 399-400 (6th Cir. 1999).

The United States Supreme Court recently revisited the Rule 12(b)(6) standard, concluding that the "no set of facts" rule of *Conley v. Gibson Conley v. Gibson*, 355 U.S. 41 (1957),  has "earned its retirement" and should no longer be regarded as "the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic Corporation v. Twombly,* 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007).  Rather, to be legally sufficient, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (alteration in original). The factual allegations must contain either direct or inferential allegations respecting all material elements of the claim to sustain recovery under some viable legal theory. *Id.* at 1969. The court need not accept as true mere "legal conclusions or unwarranted factual inferences." *Mixon*, 193 F.3d at 400.

A court may consider the pleadings, including the complaint, answer, and all attached written exhibits, when considering a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). The federal rules have defined the "pleadings" to include both the complaint and the answer. Fed. R. Civ. P. 7(a); *see also Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir. 2004).  Documents that are attached to answers or motions to dismiss may be considered if they are referenced in and central to the plaintiff's complaint. *See Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002); *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997) (applying rule to motion to dismiss under Rule 12(b)(6)).

**B.**     **This Court Lacks Subject Matter Jurisdiction Over Kimball's Claims.**

   **1.  This Court Lacks Subject Matter Jurisdiction Over Kimball's
        FDCPA claim.**

Kimball contends this Court has jurisdiction over her FDCPA claim pursuant to 28

U.S.C. § 1331, and supplemental jurisdiction over her other claims pursuant to 28 U.S.C. §

1367(a).  Kimball's Amended Complaint fails to establish such jurisdiction.

> [T]o establish *prima facia* case for violation of the FDCPA requires a plaintiff to
> plead and prove four elements:
>
> (1) the plaintiff is any natural person who is harmed by violations of the FDCPA,
> or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692c(d) for
> purposes of a cause of action 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11)[;]
> (2) the "debt" arises out of a transaction entered primarily for personal, family, or
> household purposes, 15 U.S.C.A. § 1692a(5)[;] (3) the defendant collecting the
> debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and (4)
> the defendant has violated, by act or omission, a provision of the FDCPA, 15
> U.S.C.A. § 1692a-1692o; 15 U.S.C.A. § 1692a; 15 U.S.C.A. § 1692k.

*Duncan v. Citibank*, 2006 U.S. Dist. LEXIS 95351, at *13-14 (D.N.M. 2006);  *see also Grimard*

*v. Palmer, Reifler and Assoc.*, 2007 U.S. Dist. LEXIS 55733, at *5-6 (E.D. Mich. 2007)("In

order to state a claim under the FDCPA, the party claiming a FDCPA violation must show that

he or she is a 'consumer' and that the 'debt' being requested arises out of a transaction in which

the money, property, insurance, or services which are the subject of the transaction are primarily

for    personal,    family,    or    household    purposes.")(internal    citation    and    quotation

omitted)(dismissing plaintiff's complaint for failing to allege these "threshold requirements").

Here, Kimball has alleged only that "the loan was secured by a mortgage to Ameriquest

on property she owned located at 4679 East 173 Street in Cleveland."   Am. Comp., ¶ 25.

Plaintiffs Whittiker and Stepanek, in contrast, expressly allege that their debts were "created

primarily for personal, family or household purposes."  Am. Comp., ¶¶ 19, 31.  Given Plaintiffs'

request of the Court for leave to amend their complaint to address this issue, Kimball's failure to

allege the underlying debt was "created primarily for personal, family or household purposes" cannot be an inadvertent omission.  Rather, Kimball's silence as to the purpose of the debt reveals actual knowledge on the part of her counsel that the debt was not subject to the FDCPA and that this Court lacks jurisdiction over her claims.[2]

Having failed to allege that the underlying debt was primarily for personal, family, or household use, Kimball has failed to allege a *prima facia* FDCPA claim and, consequently, this Court lacks subject matter jurisdiction over her FDCPA claim.  *See Kafele v. Frank & Woolridge Co.*, 108 Fed. App. 307, 2004 U.S. App. LEXIS 17809 (6th Cir. 2004)(affirming dismissal of FDCPA claim where plaintiff failed to allege mortgage debt in underlying foreclosure action was a consumer debt within the meaning of 15 U.S.C. § 1692a(5)).

### 2.   This Court Lacks Subject Matter Jurisdiction Over Kimball's Ohio Rico And Receiver Claims.

This Court also lacks subject matter jurisdiction over Kimball's Ohio RICO and Receiver claims because the disposition of these claims would improperly require this Court to reverse the judgment rendered in state court foreclosure proceedings.  As the United States Supreme Court has explained, federal district courts lack subject matter jurisdiction over "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon,* 544 U.S. at 283-284.  This limitation on subject matter jurisdiction is based upon the "*Rooker-Feldman* doctrine."

---

[2] The representation by Kimball and her counsel that MDK violated the FDPCA, when they know her debt was not subject to the FDCPA (Kimball admitted to the Court that the mortgage loan was for a rental property), would constitute a violation of Ohio Revised Code Section 2921.03, Ohio's criminal "intimidation" statute, *if* Plaintiffs' interpretation of that statue were correct.  Fortunately for Kimball and her counsel, and contrary to the assertion in the Amended Complaint, a false factual statement in a pleading does *not* constitute a violation of R.C. § 2921.03.  It does, however, constitute a violation of Fed. R. Civ. P. 11 where, as is true here, the false statement is made knowingly.

The *Rooker-Feldman* doctrine, a name coined from two U.S. Supreme Court decisions: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), holds that "appellate jurisdiction to reverse or modify a state court judgment is lodged, initially by Section 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257," in the Supreme Court. *Id.* at 283. "Federal district courts," on the other hand, "are empowered to exercise original, not appellate, jurisdiction." *Id.* The Sixth Circuit has delineated the scope of this doctrine, applying it to only those cases where the source of the plaintiff's injury is the state court's decision:

> The doctrine applies only when a plaintiff complains of injury from the state court judgment itself. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

The *Rooker-Feldman* doctrine denies subject matter jurisdiction to district courts where the plaintiff is seeking appellate review in federal court of an adverse state court judgment – in essence, when the relief sought would "'reverse or modify' the state court decree. . . ." *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006)(quoting *Exxon*, 544 U.S. at 284). To determine whether a plaintiff is seeking appellate review of a state court decision, which is barred by *Rooker-Feldman*, courts look to the specific relief sought by the plaintiff. *In re Crane*, 2005 Bankr. LEXIS 2887, at *4 (Bankr. S.D. Ohio 2005)(to determine if a claim is barred by *Rooker-Feldman* "the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision")(citing *In re Singleton*, 230 B.R. 533, 536-37 (B.A.P. 6th Cir. 1999)); *Wasko v. Moore*, 122 Fed. Appx. 403, 406 (10th Cir. 2005)("To determine if *Rooker-Feldman* applies, we look to the relief [plaintiff] seeks.").

The relief Kimball seeks in her Amended Complaint makes clear that her Ohio RICO and Receiver claims seek to reverse the judgments entered in the Ohio state foreclosure actions. Specifically, Kimball prays "under Count Two [her Ohio RICO claim], for an order that Defendant Deutsche Bank must divest any interest in plaintiffs' and Class Members' real property that it acquired through foreclosure actions during the class period[.]" Am. Comp., ¶ 18. Kimball further prays, "under Count Three, for an order appointing a receiver to recover from Defendant Deutsche Bank the charges it collected from plaintiffs, as well an any interests in property it acquired illegally, who shall determine the proper allocation and ownership of these funds and property interests." Am. Comp., ¶ 19. This relief would require the Court to reverse the foreclosure judgment entered by the state court that assessed any charges of which Kimball complains and to vest title to Kimball's former property in Deutsche Bank. Because this Court cannot grant the requested relief without reversing, either actually or in effect, the foreclosure judgment Kimball concedes was entered against her, her claims under the Ohio RICO and Receiver statutes are barred by *Rooker-Feldman*.

In a similar situation involving a claim under the Truth in Lending Act ("TILA"), the plaintiff sought to rescind a loan secured by a mortgage on his residence *after* a state court judgment in foreclosure had been rendered against him. The court held that *Rooker-Feldman* barred exercise of jurisdiction over the plaintiff's claim. *In re Cooley*, 365 B.R. 464, 472 (Bankr. E.D. Pa. 2007). Noting that the debtor's TILA claim was "arguably" independent of the state court foreclosure action, the court in *Cooley* held that *Rooker-Feldman* nonetheless denied the court subject matter jurisdiction over the debtor's TILA claim for rescission because of the requested relief:

> Debtor's claim for rescission under TILA clearly would render the state court mortgage foreclosure judgment unenforceable. The conclusion that Debtor's

claim for rescission would have the effect of undermining [the defendant's] foreclosure judgment is the death knell to his claim.  Since granting rescission would negate the foreclosure judgment, Debtor's TILA claim for rescission in Count I is "inextricably intertwined" with the state court adjudication.  The claim is, therefore, barred by the *Rooker-Feldman* doctrine.

*Id*.  For these reasons, the *Rooker-Feldman* doctrine operates to deny this Court subject matter jurisdiction over Kimball's Ohio RICO and Receiver claims.

**C.  Kimball's FDCPA Claim Is Barred By The One-Year Statute of Limitations.**

In the alternative, Kimball's FDCPA claim is barred by the one-year statute of limitations.  The FDCPA provides: "An action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "The statute thus places significance on when a violation is made, not when it is made known."  *Purnell v. Arrow Financial Services, LLC,* 2007 U.S. Dist. LEXIS 7630 (E.D. Mich. 2007).   Kimball alleges that Defendants violated Section 1692e when Defendants filed the foreclosure action against her in state court, asserting that MDK made false representations regarding Deutsche Bank's standing to sue.  Am. Comp., ¶¶ 35-37.  Kimball filed her original complaint on February 14, 2008; therefore, to be timely, Plaintiffs' FDCPA claims against Defendants must not have arisen before February 14, 2007.

The statute of limitations begins to run on an FDCPA claim when the alleged misrepresentation occurs.  *See  Calka v. Kucker, Kraus & Bruh, LLP,* No. 98-0990, 1998 U.S. Dist. LEXIS 11868 (S.D.N.Y. Aug. 3, 1998).  Where the alleged misrepresentation occurs in a prior state court filing, the date of the filing is the date the FDCPA claim accrues.  *Id*.  The foreclosure action against Kimball was filed on May 25, 2005.  Am. Comp., ¶ 26.  Assuming the facts as alleged in the complaint are true, the FDCPA violation occurred when the State Action was filed May 25, 2005.  The initial complaint in this action was filed on February 7, 2008,

thirty-three months after the alleged violation.  Accordingly, the FDCPA claim is barred by the one-year period of limitations.

### D. Kimball's Ohio Rico Claim Is Barred Because The  Defendants Did Not Engage In A Pattern Of "Corrupt Activity."

MDK is further entitled to judgment in its favor on the pleadings on Kimball's claim under the Ohio RICO Act, R.C. §§ 2923.31, *et seq.*, even if Kimball's factual allegations were true.  The Ohio RICO Act prohibits a person, "through a pattern of corrupt activity or the collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property." R.C. § 2923.32.   Kimball contends that MDK and Deutsche Bank engaged in a "pattern of corrupt activity" (rather than the "collection of an unlawful debt") while seeking to help Deutsche Bank acquire an interest in or control of "real property" (rather than an interest in or control in an "enterprise") by (1) "knowingly filing complaints alleging DBNTC's [Deutsche Bank] ownership of promissory notes and mortgages when in fact it did not own the notes or mortgages;" and, apparently, (2) "by knowingly filing complaints as trustee in reckless disregard of the fact that Defendant DBNTC [Deutsche Bank] was not authorized to engage in such activities as trustees in Ohio."  Am. Comp., ¶ 43.

Assuming the truth of her factual allegations, those allegations do not state a cognizable cause of action under the Ohio RICO Act because false statements of fact in a pleading do not constitute a "corrupt activity" under the Ohio RICO Act.  Therefore, Kimball has failed to state a claim upon which this Court can grant relief, and MDK and Deutsche Bank are entitled to judgment on the pleadings on Count II of the Amended Class Action Complaint. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

Recounting a portion of R.C. §2923.31(A)(2), Kimball recites at paragraph 40 of her Amended Complaint the foundation for her theory of liability: "'No person, through a pattern of

-11-

corrupt activity . . . shall acquire or maintain, directly or indirectly, any interest in, or control of, any . . . real property.'" Am. Comp., ¶ 40 (quoting a portion of R.C. § 2923.32(A)(2)). The "pattern of corrupt activity," according to Kimball, is purported violations of Section 2921.02 of the Ohio Revised Code, the felony "intimidation" statute.[3] *See* R.C. § 2923.31(D) (defining "pattern of corrupt activity" as "two or more incidents of corrupt activity . . . that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event" and requiring at least one instance of "corrupt activity" to include a felony); *see also* R.C. § 2923.31(I)(2) (listing the predicate crimes and defining "corrupt activity" to include a violation of R.C. § 2921.03).

The general "intimidation" statute prohibits, in pertinent part, a person from "filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, [in an] attempt to *influence, intimidate, or hinder* a public servant, party official, or witness in the discharge of a person's duty."[4] R.C. § 2921.03(A) (emphasis added); *see* also R.C. § 2921.03(B) (defining predicate criminal act required to find RICO violation). The Committee Comment to the statute as enacted in 1974 explains the offense:

> **The gist of an offense under this section is an attempt, by means of a threat, to corrupt a public servant or interdict the performance of his duties**. The offense complements the offense of bribery, i.e., bribery represents the carrot and intimidation represents the stick. The threat of harm involved in a violation of this section is not restricted to a threat of physical harm. [1974 Committee Comment to 134 v H 511 (*eff*. Jan. 1, 1974).]

---

[3] A violation of the intimidation statute is a felony of the third degree, punishable by imprisonment for a term of years, ranging from one to five years. R.C. §2929.14(A)(3).
[4] By definition, a "public servant" includes "[a]ny public official." R.C. §2921.01(B)(1).

Kimball asserts that MDK and Deutsche Bank committed this predicate act (1) "by knowingly filing complaints alleging Deutsche Bank's ownership of promissory notes and mortgages when in fact it did not own the notes or mortgages"; and (2) "by knowingly filing complaints as trustee in reckless disregard of the fact that Defendant Deutsche Bank was not authorized to engage in such activities as trustees in Ohio."  Am. Comp., ¶43.  Kimball asserts that the act of filing the complaints without Deutsche Bank owning the notes and mortgages and having the capacity to act as a trustee in Ohio was performed "in a wanton and reckless manner to attempt to influence state and federal judges and judicial officers in Ohio to enter judgments against Class members on promissory notes . . . and to foreclose on Class members' property."  Am. Comp., ¶ 43.

But to simply allege that Defendants made false statements of fact in a pleading to "influence" a judicial officer -- without any additional allegation that Defendants threatened or intimidated these judges to enter judgment in their client's favor -- does not state (nor does it constitute) a "corrupt activity" involving the crime of "intimidation."  Indeed, an "attempt to influence, intimidate or hinder" under Revised Code §2921.03 involves *quid pro quo* (*e.g.,* "unless you do X, I will do Y to you").  *See State v. Bowshier*, 167 Ohio App.3d 87, 2006-Ohio-2822, 853 N.E.2d 1210, ¶68; *State v. Roten*, 149 Ohio App.3d 182, 2002-Ohio-4488, 776 N.E.2d 551, ¶20-21 (upholding conviction where appellant-defendant sent sham legal documents to prosecuting attorney, clerk of courts, and grand jury foreman "requiring payment of large sums if they did not release appellant's father or failed to respond to appellant's documents").

The Supreme Court of Ohio's recent analysis of the meaning of "intimidation" and "threat" as used in a companion "intimidation" statute, R.C. § 2921.04 provides additional guidance on the "*quid pro quo*" aspect of felony intimidation.  *See State v. Cress*, 112 Ohio St.3d

-13-

72, 2006-6501, 858 N.E.2d 341 (2006).  Similar to the prohibitions in the general intimidation statute, Section 2921.04 prohibits a person, "knowingly and by force or by unlawful threat of harm to any person or property, [to] attempt to *influence, intimidate, or hinder* the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness." R.C. § 2921.04(B) (emphasis added).

"To 'intimidate' means to 'make timid or fearful: inspire or affect with fear: frighten * * *; *esp*.: to compel to action or inaction (*as by threats*)." *Cress*, 112 Ohio St.3d at 77 (quoting Webster's, *supra*, at 1184 (emphasis added and capitalization omitted)).  "'Intimidation,'" the court noted, "by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *Id*.  In this respect, the Court found no "meaningful difference between intimidation of a witness and the making of a threat to a witness." *Id.*

Plaintiffs' Amended Complaint contains nothing explaining how Defendants' purportedly false statements about Deutsche Bank's *capacity to sue* as a trustee on a mortgage and note it allegedly did not own could possibly create "fear of negative consequences for purpose of influencing behavior" in the unidentified state judges.  *Cress*, 112 Ohio St.3d at 77.  Certainly, a plaintiff's factual statement made in a pleading about his or her own standing to sue a defendant, even if it is false, is not the kind of statement that creates fear or apprehension in a judge. *See id*. Nor is it the kind of statement that implies "something given or received for something else." Merriam Webster's Collegiate Dictionary 959 (10th Ed. 1996) (defining *quid pro quo*).  In this instance, Defendants' alleged act of inserting purportedly false statements of fact in a pleading about Deutsche Bank's standing to prosecute a foreclosure claim does not constitute the *quid pro*

*quo* intimidation required by Section 2921.03. For this reason, Plaintiffs' allegations do not constitute a "corrupt activity." R.C. § 2923.31(I)(2).

Having failed to allege an actionable predicate act, an essential element of a "corrupt activity," in the acquisition of an interest in real property, Kimball's claim under Section 2923.32(A)(2) fails as a matter of law. Thus, MDK and Deutsche Bank are entitled to judgment in their favor on the pleadings on Count II of the Complaint. *Paskvan*, 946 F.2d at 1235.

## IV.    CONCLUSION

Plaintiff comes to this Court asserting claims based upon alleged misrepresentations by Manley, Deas, Kochalski, LLC in a prior case, and bases her claims upon misrepresentation and omission. Plaintiff does not allege in her Amended Complaint that the debt upon which she was sued in the prior case falls within the protection of the FDCPA, and she admitted to the Court that the debt was for a rental property, which establishes unequivocally that the FDCPA does not apply. Thus, this Court lacks subject matter jurisdiction over Plaintiff's claims and, while Plaintiff may not be expected to know or understand the requirements for subject matter jurisdiction, her counsel certainly is.

In addition to bringing a claim over which the Court lacks subject matter jurisdiction, Plaintiff has brought her claims based upon incorrect factual and legal assumptions. For all these reasons, Defendant Manley, Deas, Kochalski, LLC respectfully requests that the Court dismiss this baseless claim for lack of subject matter jurisdiction or, alternatively, enter judgment on the pleadings in favor of Defendant.

Respectfully submitted,


 /s/ Rodger L. Eckelberry
Mark A. Johnson (0030768)
mjohnson@bakerlaw.com
Rodger L. Eckelberry (0071207)
reckelberry@bakerlaw.com
Robert J. Tucker (0082205) (*pro hac vice*)
rtucker@bakerlaw.com
Baker & Hostetler LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, OH  43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616

Michael K. Farrell (0040941)
mfarrell@bakerlaw.com
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740

Robert Eddy (0030739)
reddy@gallaghersharp.com
Erik Wineland (0072088)
ewineland@gallaghersharp.com
Gallagher Sharp
420 Madison Ave., Suite 1250
Toledo, Ohio 43604
Telephone: 419.241.4860
Facsimile: 419.241.4866

*Counsel for Defendant*
*Manley Deas Kochalski LLC*


-16-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June <u>19th</u>, 2008 the foregoing document was filed with

the Court, with service to all counsel of record via the Court's ECF system including:


James B. Rosenthal, Esq.
Joshua R. Cohen, Esq.
Jason R. Bristol, Esq.
The Hoyt Block Bldg, Suite 400
700 West St. Clair Ave.
Cleveland, Ohio 44113

William J. Novak, Esq.
Thomas D. Robenalt, Esq.
Skylight Office Tower – Suite 950
1660 West Second Street
Cleveland, Ohio 44113-1498

*Counsel for Plaintiffs*


/s/ Rodger L. Eckelberry
Rodger L. Eckelberry