IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY A. WHITTIKER and | ) | |
| FRANCES G. WHITTIKER, et al., | ) | CASE NO. 1:08-CV-0300 |
| | ) | |
| Plaintiffs, | ) | JUDGE DOWD |
| v. | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL | ) | MAGISTRATE JUDGE PEARSON |
| TRUST COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

The matter is before this Court pursuant to a referral order from District Court Judge Dowd under 28 U.S.C. § 636(b)(1) and Local Rule 72.1, seeking a report and recommendation on outstanding dispositive motions and a request for judicial notice.  (Referral Order, ECF No. 93).[1]

**Introduction**

Count One of the First Amended Complaint alleges that the defendants violated a federal statute, the Fair Debt Collection Practices Act ("FDCPA"), Title 15, United States Code, Section 1692

---

[1]  Although not specified in the Referral Order, this Court also recommends a ruling on DBNTC's Request for Judicial Notice at ECF No. 92-2.

*et seq.*, by filing three separate state court foreclosure complaints that "falsely represented that the [mortgage] debts were owed to Deutsche Bank National Trust Company ("DBNTC"), when in fact they were not."[2]  (Plaintiffs' Opposition, ECF No. 85 at 26.)

Count Two alleges violations of Ohio's Corrupt Practices Act ("Ohio RICO"), pursuant to Ohio Revised Code § 2923.32 and Count Three seeks Appointment of Receiver, pursuant to Ohio Revised Code § 2923.32.  Counts Two and Three are state-law causes of action and arise from the same circumstances causing Count One.

The defendants moved to dismiss each count of the First Amended Complaint.

For the reasons set forth in detail below, the Magistrate Judge recommends that the motions to dismiss be granted as to Count One, the sole federal cause of action, and that the Court decline to maintain jurisdiction over the remaining state law causes of action, Counts Two and Three.  This report, therefore, focuses on the only federal claim, Count One.

**1.      The Parties:**

Plaintiffs are individuals against whom foreclosure actions have been filed in the Court of Common Pleas for Cuyahoga County, Ohio ("state court").  The matters regarding the Whittikers (Jerry and Frances) and Valeria Kimball have been fully adjudicated in state court with foreclosure having been granted to DBNTC.  The matter regarding James Stepanek is still pending in state court. The First Amended Complaint explicitly alleges that the mortgage debts for the Whittikers and Stepanek were "created primarily for personal, family or household purposes."  (First Amended

---

[2] The instant complaint challenges only three foreclosure actions; the record, as a whole, however, clearly shows an intention to seek certification of the matter as a class action.  (*See* Motion for Class Certification, ECF No. 54.)  Plaintiffs' Motion for Class Certification is still pending; that motion, however, was not referred to the Magistrate Judge.

Complaint, ECF No. 57 at ¶¶ 19 and 31.)   The First Amended Complaint is silent on this matter as to

Plaintiff Valeria Kimball.[3]  Plaintiffs allege that each defendant is a "debt collector" as defined in

section 1692e of Title 15, United States Code.

The defendants are DBNTC, a national banking association, and three law firms hired by

DBNTC to file and prosecute the foreclosure actions on behalf of DBNTC in state court.  Paragraphs 2

and 12 through 14 of the First Amended Complaint describe DBNTC as a "trustee" (albeit one

Plaintiffs' claim is not fully in compliance with Ohio's law governing trustees).[4]  (*See*  DBNTC's

Memo. in Support of Mot. To Dismiss, ECF No. 75-2 at 11, including Note 7.) ("DBNTC, as a trustee,

is not a debt collector as defined in the FDCPA.")[5]

Weltman, Weinberg & Reis Co. ("WWR"), a law firm, prosecuted the foreclosure action on the

mortgage of the Whittikers on behalf of its client, DBNTC.  At the conclusion of that action, the

---

[3] The omission of Ms. Kimball's primary use of the mortgage debt is significant as
pointed out by Defendant Manley, Deas, Kochalski, LLC ("MDK"): "[B]ecause the FDCPA
applies only to debts created 'primarily for personal, family or household purposes,' and because
Kimball's alleged FDCPA claim is the sole basis for subject matter jurisdiction [in federal
court].  Without this essential element, Kimball has failed to establish that this Court has subject
matter jurisdiction over her claims." (MDK Memo in Support of Mot. To Dismiss, ECF No.71 at
2.)  Additionally, without admitting that the allegation that the debt was "incurred for personal,
family or household purposes" was "necessary to avoid dismissal," Plaintiffs pledged the First
Amended Complaint would include such an allegation.  (Plaintiffs Memo in Resp, ECF No. 51 at
4.)  It did not.

[4] DBNTC also describes itself as a trustee and provides documentation in support.  (*See*
Request For Judicial Notice, ECF Nos. 76-8; 76-9;  76-10.)

[5]DBNTC argues that it is not a debt collector as defined by the FDCPA and, for that
reason among others, urges that Count One must fail.  The Court finds DBNTC's argument well
articulated but declines to rule on DBNTC's status as a debt collector because Plaintiffs' failure
to allege the linchpin of a FDCPA action - a false, deceptive or misleading representation on the
part of the defendants – prohibits Plaintiffs from establishing a *prima facie* case under the
FDCPA, making no additional analysis of DBNTC's status as a debt collector necessary.

Cuyahoga Court of Common Pleas issued a judgment entry in favor of DBNTC.  (*See* WWR Answer to First Amended Complaint, ECF No. 69, Ex.G.)

Manley Deas Kochalski, LLC ("MDK"), also a law firm, prosecuted the foreclosure of Valeria Kimball's mortgage on behalf of its client, DBNTC.  At the conclusion of that action, the Cuyahoga Court of Common Pleas also issued a judgment entry in favor of DBNTC.  (*See* DBNTC Request for Judicial Notice, ECF No. 76, Exhibit 1.)

Reisenfeld & Associates ("Reisenfeld"), the third law firm acting on behalf of DBNTC in this matter, initiated the foreclosure of the mortgage of James Stepanek on behalf of its client, DBNTC.

### 2.     Procedural History

On February 7, 2008, Plaintiffs Jerry and Frances Whittiker along with Valeria Kimball initiated this matter and subsequently, sought class certification.  (Complaint, ECF No. 1; Motion for Class Certification, ECF No. 54.)   On May 16, 2008, Plaintiffs filed the First Amended Complaint and added an additional plaintiff, James K. Stepanek.  Each of the four defendants in the instant matter filed motions to dismiss the First Amended Complaint in its entirety.  Defendants MDK, Reisenfeld and WWR filed for dismissal pursuant to Rule 12(c), after answering the First Amended Complaint. (*See* ECF Nos. 70, 72, 74.)   DBNTC filed for dismissal pursuant to Rule 12(b)(6) and Requests for the Court to Take Judicial Notice [of certain documents].  (*See* ECF Nos. 75, 76, 92-1, 92-2, 92-3, 92-4, 92-5.)  Plaintiffs filed an omnibus response, (ECF No. 85), after being granted leave for limited discovery.  (Discovery Order, ECF No. 82.)  Each defendant filed a reply.  (ECF Nos. 89, 90, 91 and 92.)  Plaintiffs filed a sur-reply and Defendant DBNTC replied to Plaintiffs' Sur-Reply.[6]

_____

[6]  Prior to the filing of the First Amended Complaint, Defendant Reisenfeld filed a motion to dismiss (ECF Nos. 32, 33.) claiming that the initial Complaint did not allege that either of the named plaintiffs was injured by Reisenfeld or that Reisenfeld was involved in any

DBNTC, like each of the three law firm defendants, filed motions arguing several reasons why the entire First Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted.  Chief among the collective reasons for dismissing Count One is that DBNTC, as trustee for the issuers of the debt, was indeed the owner and holder of the mortgage note for each of the plaintiffs' at the time of filing in state court, although the mortgages had not yet been assigned or recorded. (DBNTC Request for Judicial Notice, ECF Nos. 76-3; 76-4; 76-5.)  The Whittiker and Kimball notes were assigned and recorded, however, prior to the final adjudication of the state foreclosure procedures. (DBNTC Request for Judicial Notice, ECF Nos. 76-2; 76-3; 76-4;  76-5; WWR Answer to First Amended Complaint, ECF No. 69, Ex.G.)  The Stepanek mortgage was assigned prior to the foreclosure filing and recorded on the same date as filing.  (*See* ECF No. 73 at 2; DBNTC Request for Judicial Notice, ECF No. 76-5.)

The other reasons offered for dismissal include *res judicata*, filing beyond the one-year statute of limitations and preclusion by the *Rooker-Feldman* and *Younger* Doctrines.[7]  MDK's motion for judgment on the pleadings also urges the Court to dismiss Count One relative to Ms. Kimball for failing to allege that Kimball's mortgage debt was incurred for personal use.  That threshold issue is addressed below along with the statute of limitations argument.

On December 2, 2008 this Court held oral argument.  Consequently, in rendering this

---

manner in *their* cases.  This motion was terminated as moot due to the filing of the First Amended Complaint.

[7]  The *Rooker-Feldman* and *Younger* Abstention doctrines prohibit federal courts from hearing certain matters already decided or still pending in state courts, respectively.  Given that Plaintiffs have failed to establish a *prima facie* case, it is not necessary to rule on the applicability of these limitations on federal jurisdiction nor Defendants' other grounds for dismissal.  However mention is provided where needed.

recommendation the Court has the benefit of the parties additional views on this matter.

**3.      Basis for Jurisdiction**

The FDCPA specifically provides district courts jurisdiction over claims made pursuant to the

Act "regardless of the amount in controversy," if the claim is brought "within one year from the date

on which the violation occurs."  *See* 15 U.S.C. § 1692k(d).  Additionally, the Court has federal

question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law

claims under 28 U.S.C. § 1367.  In considering state law claims pursuant to supplemental jurisdiction,

this Court must follow Ohio law.  *See Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174 F.3d 733, 741 (6th

Cir.1999).

## II.  Legal Standard

**1.      Motions to Dismiss, Generally**

Federal Rule of Civil Procedure 12© is analyzed using the same standard of review employed

for a motion to dismiss under Rule 12(b)(6).  *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291,

295 (6th Cir.2008) (likening the standard for a Rule 12(b)(6) standard to that of a Rule 12© motion);

*Tucker v. Middleburg-Legacy Place, LLC,* 539 F.3d 545 (6th Cir.2008).  "For purposes of a motion for

judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party

must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly

entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007)

(internal citation and quotation marks omitted); *see also Erickson v. Pardus,* 550 U.S. 544, 127 S.Ct.

2197, 2200 (2007) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (1965).  But,

we "need not accept as true [,] legal conclusions or unwarranted factual inferences." *Id.* at 581-82

(internal citation and quotation marks omitted).  A motion brought pursuant to Rule 12© is

appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JP Morgan*, 510 F.3d at 582 (internal citation and quotation marks omitted).

Dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1959 (1965) (abrogating passage originating in *Conley v. Gibson*, 355 U.S. 41 (1957), as "an incomplete, negative gloss on an accepted pleading standard").

### 2. Consideration of Matters Outside of the Pleadings

In ruling on a motion to dismiss, the Court must ordinarily look no further than the four corners of the complaint. However, if documents are attached to, incorporated by, or specifically referred to in the complaint, they are considered part of the complaint and the Court may consider them. The Sixth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (citations omitted).

Federal Rule of Civil Procedure 10© provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Sensations*, 526 F.3d at 296 (finding that a document attached to a complaint is incorporated into pleadings via Rule 10(c). . ." Rule 7(a) defines "pleadings" to include both the complaint and the answer. "It would seem to follow that if an attachment to an answer is a 'written instrument,' it is part of the pleadings and can be considered on a Rule 12(c)motion for judgment on the pleadings without the motion being converted to one for

7

summary judgment." *Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002) ("The conversion provision applicable to Rule 12(b)(6) motions is identical to the one applicable to Rule 12(c) motions, and they serve the identical purpose of preventing the circumvention of the Rule 56 notice and opportunity to be heard provisions when extraneous materials are considered."); *see also Weiner,* 108 F.3d at 89 (applying rule to motion to dismiss under Rule 12(b)(6)).

In addition, the Court may also consider matters outside the complaint of which it would be proper to take judicial notice. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir.2003); *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999).

A defendant may introduce certain pertinent documents if the plaintiff chooses not to do so.[8] *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n.3 (1st Cir.1991); *see also supra*, 5 WRIGHT & MILLER, § 1327, at 762-63. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied. *See White Consol. Indus.,* 998 F.2d at 1196. Hence, the Seventh Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

In the instant matter, Defendant DBNTC has requested that the Court take judicial notice of certain public records including excerpts from the documents showing DBNTC to be trustee of the issuer (re: the Whittikers) or the depositor (re: Kimball and Stepanek) of the mortgage loans of

---

[8]

Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which his action is based. *See* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762 (2d ed.1990).

Plaintiffs Whittiker, Kimball and Stepanek prior to the filing of the state foreclosure actions.  (*See* ECF Nos. 76, 92-2, 92-3, 92-4, 92-5.)

Additionally, the law firm defendants attached certain public records regarding the state foreclosure action against the Whittikers as exhibits to certain of their answers to the First Amended Complaint and dispositive motions. (*See e.g.* ECF Nos. 69-2, 69-3, 69-4, 69-5, 69-6, 69-7, 69-8, 69-9.)

The Plaintiffs have not objected to these documents nor challenged their authenticity.[9]  The proffered documents are all admissible as public records.  *See New England Health Care Employees Pension Fund, 336 F.3d at 501* (courts may consider materials beyond the complaint "if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *see* also F.R.E. 201 ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").  Because these documents are central to the Plaintiffs' allegation that DBNTC falsely represented itself as the owner and holder of the Plaintiffs' mortgages, this Court takes judicial notice of them.  *See* also F.R.E. 201 ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").

### III.  Law and Analysis

### 1.  Purpose of the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt

---

[9]  Plaintiffs filed no opposition to DBNTC's request for judicial notice nor did they voice any in response to questioning during oral argument.  The lack of objection from Plaintiffs satisfies any concern this Court might have had regarding its reliance on the proffered documents which are obviously integral to Plaintiffs' FDCPA claim.

collection abuses." 15 U.S.C. § 1692e; *accord Montgomery v. Huntington Bank,* 346 F.3d 693, 698 (6th Cir.2003); *Lewis v. ABC Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir. 1998).  Congress intended the Act to eliminate unfair debt-collection practices, such as late night telephone calls, false representations, and embarrassing communications.  *Lewis,* 135 F.3d at 398.  The Senate Report justified the need for legislation by stating:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  *Id.*

The FDCPA prohibits the use of  "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This broad prohibition is typically referred to as the FDCPA's "general ban."  In addition to this general ban, section 1692e is divided into sixteen subsections that provide a non-exhaustive list of prohibited practices.  Plaintiffs' First Amended Complaint alleges violation of Section 1692e's general prohibition and sections 1692e(2), (5) and (10).  Section 1692e states the following, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of  (A) the character, amount, or legal status of any debt; or . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

In determining whether a debt collector's practice is deceptive within the meaning of § 1692e of

the FDCPA, the courts routinely apply an objective test based on the understanding of the "least sophisticated consumer."  *See e.g. Lewis*, 135 F.3d at 398 (finding "[t]he use of an assigned alias or office name, even when considered from the standpoint of the least sophisticated debtor, does not misrepresent the amount of a debt, the consequences of its non-payment, nor the rights of the contacted debtor."); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992) (holding that the contents of a collection letter were not misleading, even under the "least sophisticated consumer"standard).[10]

### 2.  The General Failure of FDCPA claim

Count One alleges that the defendants violated the FDCPA in five different ways.  Each alleged method of violation pled relies on a common  thread – that DBNTC falsely claimed to be the true owner and holder of the Plaintiffs' mortgage debts *at the time DBNTC* filed the state foreclosure actions.[11]  *See also* Plaintiffs' Memo in Opp., ECF. No. 85 at 32 ("The essence of Plaintiffs' FDCPA

_____

[10] The least sophisticated consumer test is most typically used to evaluate the deceptiveness of language in collection letters.  The Court, however, finds this test instructive in evaluating potential violations of § 1692e such as those alleged in the instant case because Plaintiffs' claim to have been deceived by DBNTC's alleged false identification of itself as the "owner" and "holder"of the notes and mortgages can be analogized to an allegedly false statement in a collection letter.  *See e.g., Lewis*, 135 F.3d at 400- 401.

[11]Specifically, Count One states in pertinent part:

> In foreclosing on plaintiffs homes, the defendants:

a.   made false, deceptive and misleading representations concerning DBTNC's standing to sue the plaintiffs and its interest in the debt;

b.   falsely represented the status of the debt, in particular, that it was due and owing to defendant DBNTC at the time the suit was filed;

c.   falsely represented or implied that the debt was owing to defendant DBTNC as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

claim is that defendants misrepresented Deutsche Bank's ownership of Plaintiff's notes and thus concealed the fact that it lacked the capacity to bring the foreclosure actions.")  Each of the defendants disputes this allegation.

To establish a *prima facie* case for a violation of the FDCPA, plaintiffs must prove four essential elements:

1. the  plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for  purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11)[;]

2. the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5)[;]

3. the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and

4. the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A § 1692a-1692o;  15 U.S.C.A § 1692a; 15 U.S.C.A § 1692k.

*See e.g., Duncan v. Citibank*, 2006 WL 4063022, at *5 (D.N.M. 2006); *Grimard v. Palmer, et al.*, 2007 WL 2287831, at *2 (E.D. Mich.).  The absence of any one of the four essential elements is fatal to a FDCPA lawsuit.

Against this backdrop, the question before the Court becomes whether Plaintiffs have pled an actionable FDCPA claim.  This Court finds that Plaintiffs have not.

Even when viewed in the light most favorable to the Plaintiffs, a review of the record and the

---

d. threatened to take action, namely engaging in collection activities and collection and foreclosure suits as trustee that cannot legally be taken by them; and

e. obtained access to Ohio state and federal courts to collect on notes and foreclose on mortgages under false pretenses, namely, that DBNTC was duly authorized to engage in such activities as trustee in Ohio when it [sic] fact was not.

(First Amended Complaint, ECF No. 57 at ¶36.)

12

law shows that even if DBNTC's statement of ownership of the mortgage debts made at the time the foreclosure suits were filed was false, *i.e.,* technically incorrect, there was no deception, when viewed through the eyes of the least sophisticated consumer.  The pleadings, including the judicially recognized attachments thereto, clearly show that DBNTC had been appointed trustee for the real parties in interest and *physically held* the mortgage loans prior to the filing of each foreclosure action.  *See* DBNTC Request for Judicial Notice, ECF Nos. 76-3; 76-4; 76-5; 97-3.  In the case of the Whittikers and Kimball, assignment occurred later, but (as discussed below) that does not resemble deception as much as poor housekeeping.[12]  The record before this Court has firmly established that, at filing, the debts were DBNTC's.  Although the federal and state trial courts have established rules of procedure directing the filing of foreclosure actions in a sequence not consistently followed by DBNTC, Sixth Circuit case law has established that filing a complaint without the immediate means of proving a claim is not an FDCPA violation.[13]  *Harvey,* 453 F.3d 324 at 333 (6th Cir. 2006).

The FDCPA is designed to root out trickery and deception.  This action does not fall within the scope of practices the FDCPA was designed to curb, such as abusive phone calls, false and deceptive debt collection letters, and other patently unfair behaviors detailed in the statute's legislative history.  *See Lewis v. ABC Bus. Serv.*, 135 F.3d 389, 398 (6th Cir. 1998).  Plaintiffs have not argued that they were not in default on their mortgage loans or that the amounts claimed due were in dispute.  They have not made allegations that they were misdirecting payments because they did not know whom truly

---

[12]  Stepanek's foreclosure action was filed after assignment of the mortgage and contemporaneous with the recording of the assignment so, when his circumstances are viewed through the lens of the least sophisticated consumer, he has not painted even a colorable case of deception.

[13] *See* Sixth Amended General Order No 2006-16 and Cuyahoga Court of Common Pleas local rules on foreclosure, *see* http://cp.cuyahogacounty.us/internet/Id.-27-LocalRules.aspx.

held their mortgage notes.  Nor have Plaintiffs claimed surprise or lack of notice of the foreclosure actions.[14]  At oral argument, Plaintiffs' counsel was unable to identify any prejudice or harm suffered by his clients as a result of the foreclosure under the name of DBNTC.[15]

Plaintiffs incorrectly analogize the standing requirements necessary to determine the real party in interest in real estate transactions with the deception the FDCPA is designed to combat.[16]  Plaintiffs allege that DBNTC was not the true owner and holder of their mortgage loans at the time the foreclosure lawsuits were filed because the mortgage loans were not timely assigned or recorded; were not properly executed; or were not physically transferred prior to the filing of the foreclosure action.  Several courts have failed to find FDCPA violations under similar circumstances.  *See, e.g. Harvey*, *Shivone* and *Martin*, *infra.*

Moreover, the Sixth Circuit has ruled that a *per se* false statement does not violate the FDCPA without deception.  In *Lewis v. ABC*, the Sixth Circuit found that it was not violative of the FDCPA for a debt collector to use a fake name or pseudonym on letters sent to debtors.  Lewis, 135 F.3d at 400.

---

[14] At oral argument, Plaintiffs' counsel stated that Stepanek was engaged in negotiations with someone other than DBNTC regarding his foreclosure.  Plaintiffs counsel did not describe what harm, if any, that conversation caused Stepanek.  Discussing without deciding this issue, the *Younger* Abstention doctrine might certainly preclude a federal court from deciding Stepanek's FDCPA Claim while his state court action is still pending, a vice the *Younger* Abstention staunchly guards against.  *See Younger v. Harris, 401 U.S. 37, 44-45 (1971).*

[15] It is worth noting that the FDCPA has been construed by some courts as a strict liability statute and, as such, requires no harm be proven.  *Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (2007)* (crediting the proliferation of FDCPA lawsuits, in part, to debtors suing over a perceived wrong rather than paying a legitimate debt and cautioning, "[T]here comes a point where this Court should not be ignorant as judges of what we know as men.") (citations omitted).

[16] "The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter."  *State ex rel. Tubbs Jones v. Suster, 701 N.E.2d 1002, 1008 (Ohio 1998).*  Deception is not so easily cured.

14

The Court reasoned that "no deception occurs even if the answering representative fails to offer that he or she is not 'Althea Thomas.'" *Id.*  The Court emphasized the purpose of the protections of the FDCPA when it clarified that "[t]he use of an assigned alias or office name, even when considered from the standpoint of the least sophisticated debtor, does not misrepresent the amount of a debt, the consequences of its non-payment, nor the rights of the contacted debtor." *Id.* at 400- 401.  The Court acknowledged that the debt collector provided the debtor "false" information but disagreed that the false information was also deceptive.  *Id.*

None of the parties have presented cases precisely on point.  Of the cases cited by defendants, *Harvey,*, is the most instructive.  In *Harvey*, the Sixth Circuit affirmed the dismissal of an FDCPA cause of action wherein plaintiff claimed that "a lawsuit filed without the immediate means of proving the existence, amount or true owner of the debt is deceptive."  Harvey, 453 F.3d at 333.  The court reasoned that "[a] defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery." *Id.* at 331.  The Sixth Circuit also relied upon Rule 11, stating:

> Rule 11 of the Federal Rules of Civil Procedure does not require attorneys to ensure that their client can prove its case before filing. Instead the Rule mandates only that 'the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'

*Id.* at 333 (citing Fed. R.Civ. Proc.11(B)(3)).  The Sixth Circuit made it clear that "a debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim." *Id.* (distinguishing not having adequate proof at filing from an FDCPA violation under 1692e(2) that prohibits "the false representation of . . . the character, amount, or legal status of any debt).

Plaintiffs attempt to distinguish the instant case from *Harvey* arguing that, at filing, defendants

15

claimed the mortgage debts were owed to DBNTC when they were not – *not that DBTNC would never become the owner*.  Plaintiffs' Opp., ECF No. 85 at 26.  This is a distinction without a difference given that DBNTC has presented evidence that as trustee, it held the mortgages of each of the plaintiffs at the time the foreclosure actions were filed.  *See* ECF Nos. 76-8, 76-9, 76-10; ECF Nos. 92-2, 92-3, 92-4, 92-5 (agreements conveying notes and appointing DBNTC as trustee); *see also*, ECF No, 97-3, Affidavit of Christopher Corcoran, Vice President of DBNTC (confirming that notes were held at time of filing.)  Another branch of this Court found that same sort of evidence to be adequate proof of ownership in a foreclosure action.  *Accord Fed. Home Loan Mort. Corp. v. Lamar, infra*, aff'd 503 F.3d 504 (6th Cir. 2007).  Alternatively, and more in accordance with the *Harvey* ruling, the state court's foreclosure rulings on the matters completely adjudicated (*i.e.*, the Whittikers' and Kimball's) found DBNTC to be the owner/holders of the notes.  *See* ECF No. 69-8; ECF No.76-2 at 1-6.

In *Fed. Home Loan Mort. Corp. v. Lamar*, that Court found FHLMC to be the "true owner of the [mortgage] loan" when FHLMC had purchased a mortgage loan from the original holder prior to the filing of the foreclosure action and, as such, had standing to bring a foreclosure action. *Fed. Home Loan Mort. Corp. v. Lamar*, 2006 WL 2422903, at * 6 (N.D. Ohio Aug. 22, 2006).  Additionally, in *Shivone v. Wash. Mut. Bank*, a district court dismissed an FDCPA cause of action after finding that "[t]he Court is not convinced that filing a complaint in a mortgage foreclosure on behalf of a lender *in the process of obtaining an assignment* not fully documented constitutes a violation of the Fair Debt Collection Practices Act."  *Shivone v.Wash. Mut. Bank*, 2008 WL 3154702, *1 (E.D. Pa. Aug 2, 2008) (citations omitted) (emphasis added).  In granting defendants' motion to dismiss an FDCPA claim for failing to accurately disclose the name of the present assignee, the *Shivone* decision relied heavily on the Sixth Circuit's ruling in *Harvey*.  *Shivone's*  reasoning is also applicable to the instant matter.

Whether or not conduct violates the FDCPA turns upon an objective test based on the least sophisticated consumer standard.  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6ᵗʰ Cir. 2006).  The Court finds the analysis in the Sixth Circuit case *Harvey v. Great Seneca Financial Corporation*, to be persuasive.  In *Harvey*, much like the present matter, Plaintiff alleged that because so many cases go to default judgment lawyers fail to obtain current loan histories nor do they properly document the chain of debt ownership because of the time and expenses related to such tasks.  *Id.* at 327.  According to the [p]laintiff in *Harvey*, such practices amounted to FDCPA violations.  *The Sixth Circuit determined that such actions are not FDCPA violations as a matter of law. Id.* at 330-31.  ("Any attempt to collect a default debt will be unwanted by a debtor, but employing the court system in the way alleged by Harvey cannot be said to be an abusive tactic under the FDCPA.").  More importantly, the [C]ourt concluded that the inability to presently prove debt ownership did not amount to a FDCPA violation.  *Id.* at 333 ("[A] debt may be properly pursued in Court, even if the debt collector does not yet possess adequate proof of its claim.")  Accordingly, this Court concludes that Defendants' inability to prove ownership at the commencement of the foreclosure action is not in violation of the FDCPA.

*Shivone*, 2008 WL 3154702 at *1 (emphasis added).

### 3.  The FDCPA Does Not Impose Assignment nor Recording Requirements

Failure to timely assign, record or physically transfer a mortgage loan prior to filing a foreclosure action, while not a model of best practice, without more, is not false, misleading or deceptive behavior.[17]  In fact, such behavior has been effectively remedied by dismissals without prejudice, not via FDCPA suits.[18]  *See* Plaintiff's Opposition, ECF No. 85 at 1-2 (citations omitted).

The timing of the recordings are not indicative of a violation of the FDCPA.  In *Martin v.*

---

[17] Stepanek does not dispute his mortgage loan was assigned and recorded prior to or commensurate with the filing of the foreclosure action.  He complains, however, that the relevant documents were not physically transferred or executed.  This argument is not persuasive.  Public records, however, were available to show the recording.  DBNTC's position as trustee.  *See* Request of Judicial Notice, ECF No. 92-2.

[18] While not compliant with a federal court standing order, *see* Sixth Amended General Order No 2006-16, and, possibly Cuyahoga Court of Common Pleas local rules on foreclosure, *see* http://cp.cuyahogacounty.us/internet/Id.-27-LocalRules.aspx, this does not constitute an FDCPA violation.

*Select Portfolio Serving Holding Corp.,* the district court held that plaintiffs had not presented an

actionable claim under § 1692e of the FDCPA for fraud based on the alleged failure of the trustee

(Wells Fargo) to timely record the mortgage assignment.[19]  *Martin v. Select Portfolio Serving Holding*

*Corp.,* 2008 WL 618788, *6 (S.D. Ohio 2008).*   The Court expounded that the FDCPA does not

impose any requirements with respect to the recording of an assignment or lien.  *Id.*  Ohio's recording

statute does not invalidate an assignment that has not been recorded.  *Id.* (citing *Wead v. Lutz,* 831

*N.E.2d 484, 487 (Ohio Ct. App. 2005).*  Furthermore, evidence that the assignment was not recorded

prior to the filing of a foreclosure action in state court does not establish a violation of the FDCPA.

The record presented in the instant matter has not established that DBNTC or the law firms

representing DBNTC falsely identified to whom the Plaintiffs' debts were owed, the amount of the debt

or that the lack of more timely assignments or recordings was a deceptive or misleading representation

used in connection with the collection of a debt.  *See Martin,* 2008 WL 618788 at *6.

Under Ohio law, when a mortgage is assigned, the assignment is subject to the recording

requirements of Ohio Rev.Code Ann. § 5301.25.  (*See In re Foreclosure Cases,* 2007 WL 3232430, *2

(N.D.Ohio Oct.31, 2007.)[20]  Ohio law, however, also holds that the recording statute is intended to

---

[19]  The Court understands that the instant case can be distinguished from *Martin* because
both the assignment as well as recordings of the Whittiker and Kimball mortgages occurred after
the foreclosure actions had been filed.  Stepanek's mortgage was assigned and recorded in a
timely fashion, nevertheless Plaintiffs still claim a violation of the FDCPA, persuading the Court
that this distinction is not decisive. Nevertheless, public records show DBNTC as trustee for the
mortgage debt's owner at filing cuts against an FDCPA violation.  *See e.g.* Request for Judicial
Notice, ECF No. 92-2.  Therefore, no compelling case of deception has been made.

[20]  Plaintiffs rely greatly on Judge Boyko's ruling and encourage the Court to do the same.
(*See In re Foreclosure Cases,* 2007 WL 3232430, at *2 (N.D. Ohio Oct.31, 2007).*   The instant
matter is distinguishable from that ruled upon by Judge Boyko in several significant ways.
Initially, the foreclosure actions in the Boyko decision were filed in federal court and, at the time
of filings, none of the complaints comported with the Court's Amended General Order No.

govern priorities between lenders, not the validity of the liens.  *See, e.g., Wead v. Lutz,* 161 Ohio App.3d 580, 586, 831 N.E.2d 482, 487 (Ohio Ct.App.2005)) (holding that the recording statute, Ohio Rev.Code Ann. § 5301.25, "does not invalidate an assignment that has not been recorded").  The Ohio appellate court in *Lutz* explains that Ohio's "recording statute is meant to protect innocent, subsequent bona fide purchasers of land who have no knowledge of any encumbrances." *Lutz,*161 Ohio App.3d at 586.  In fact, the Ohio Supreme Court ruled "[t]he lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicating the matter." *State ex rel. Jones v. Suster,* 701 N.E.2d 1002, 1008 (Ohio 1998).  This effectively occurred in both the Whittiker and Kimball state court proceedings.  *See e.g.* ECF No. 69-5.

When the claims and evidence presented are viewed through the eyes of the least sophisticated consumer, the Plaintiffs fail to state an FDCPA claim.  None show the deception the FDCPA prohibits.  Therefore, the defense motions to dismiss should be granted, as to Count One, for all Plaintiffs.  Additional reasons for dismissal are provided below.

### 4.  Kimball Fails To Establish a Second Prong of the *Prima Facie* Case

The FDCPA specifically states that its purpose is "to protect *consumers* against debt collection

---

2006-16 or federal standing requirements.  This General Order requires a foreclosure plaintiff to submit an affidavit along with the complaint "documenting that the named plaintiff is the owner and holder of the note and mortgage, whether the original mortgagee or by later assignment." *See* Sixth Amended General Order No. 2006-16, pg. 2, § 1.2.5.  Having found that none of the foreclosure plaintiffs met this threshold requirement at the time of the filing, Judge Boyko required each plaintiff to submit a copy of the assignments.  None of the assignments showed the named foreclosure plaintiff to be the owner, rather each assignment "express[ed] [only] a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the named Plaintiff."  Judge Boyko dismissed each case without prejudice.  In the instant matter, judicially recognizable public records show DBNTC as the trustee for the owner and the actual holder of each of the mortgages and accompanying notes at the time of the filings in state court. *See* ECF Nos. 76-8; 76-9; 76-10.  A lack of standing can be cured procedurally unlike deception.

abuses." 15 U.S.C. § 1692(e) (emphasis added).  In order to state a claim under the FDCPA, the party claiming a FDCPA violation must show that he or she is a "consumer" and that the "debt" being requested "aris[es] out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  The First Amended Complaint, like the original complaint, does not allege this threshold requirement.  Despite having been given two opportunities to do so, Kimball failed to allege that her foreclosed upon mortgage was for personal family, or household use.  Therefore, she fails to state an actionable FDCPA claim.[21]  *See Kafele v. Frank & Woolridge Co.*, 108 Fed. App.307, 2004 U.S. App. Lexis 17809 (6th Cir. 2004) (affirming dismissal of FDCPA claim when plaintiff failed to allege mortgage debt in underlying foreclosure action was a consumer debt within the meaning of 15 U.S.C. § 1692a(5)).[22]

**5. The Whittiker's and Kimball's FDCPA Claims are Time-Barred**

Defendants WWR and MDK move, in the alternative, for dismissal of the FDCPA claim brought by the Whittikers and Kimball as time-barred because the initial complaint was filed outside of the one-year statute of limitations.  These arguments are well taken.

Section 1692k(d), entitled "Jurisdiction," requires a FDCPA claim to be brought "within one year from the date on which the violation occurs."  According to the plain language of § 1692k(d), the statute of limitations begins to run at the moment the violation occurs, without regard to when the

---

[21] During oral argument counsel for Plaintiffs acknowledged that he did not know if Kimball used the foreclosed upon property for personal matters.

[22] The FDCPA defines "debt" as "Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

plaintiff gained knowledge of the cause of action.  *See In re Rice-Etherly*, 336 B.R. 308, 313 (Bankr. E.D. Mich. 2006) ("The statute of limitations [in the FDCPA] is a jurisdictional limitation placed on federal courts by Congress which courts are not at liberty to disregard."); *Shivone v. Washington Mutual Bank*, 2008 WL 3154702, *2, (Aug. 5, 2008 E.D. Pa.); *Mattson v. U.S. West Comm., Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (holding that the statute starts to run on the date of the mailing).

Neither the Supreme Court nor the Sixth Circuit have ruled on whether the FDCPA is jurisdictional and thus not subject to equitable tolling.  The Eighth Circuit in *Mattson* reasoned, however, that the legislative objective of the FDCPA "was to protect consumers . . . by regulating the conduct of debt collectors." *Mattson*, 967 F.2d at 261.  That Court further determined that "[o]nce [the debt collector] placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete" and the "last opportunity to comply with the FDCPA [passed]." *Id.*  Assuming *arguendo,* that equitable tolling may be appropriate in certain FDCPA cases, the threshold requirements of fraud or concealment must exist.  *TRW Inc., v. Andrews*, 534 U.S. 19, 27 (2001) ("equity tolls the statute of limitations in cases of fraud or concealment").  *See also Somin v. Total Com. Mgmt. Corp*., 494 F.Supp.2d 153 (E.D.N.Y. 2007) ("equitable tolling applies only where defendant has engaged in conduct to conceal wrongdoing").  Equitable tolling is not a vehicle for protecting a claimant who has "failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Graham-Humpreys v. Memphis Brooks Museum of Art Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) ("[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling") (citations omitted).

21

It is undisputed that the Whittikers and Kimball filed the instant FDCPA cause of action well beyond the one-year statute of limitations.[23]  Stepanek's FDCPA claim was filed within the one-year statute of limitations but, nevertheless fails to state a claim under the FDCPA, because (of all the plaintiffs) Stepanek fails to allege the harm the FDCPA was designed to prohibit.  The Whittikers and Kimball claim that equitable tolling preserves their claims due to misrepresentation and concealment on the part of defendants.  *See* Plaintiffs' Memorandum in Opp, ECF No. 85 at 40- 42.  This Court is not persuaded.

### a. The Whittikers Pled the FDCPA as a Defense in their State Court Answer

Plaintiffs steadfastly maintain that the harm caused was "triggered by Defendants own conduct in 'falsely represent[ing] the status of the debt, in particular, that it was due and owing to DBNTC *at the time the suit was filed*.'" Plaintiffs' Sur-Reply, ECF No. 94-2 at 3 (emphasis added).  Therefore, even if equitable tolling were appropriate, it would not salvage the Whittiker's cause of action given that they were aware of their FDCPA claim over a year before filing the instant action, as demonstrated by their pleading of a specific defense based on the FDCPA in their state-court answer to the foreclosure action.[24]  *See* Certified Copy of Answer filed in state court, attached as Exhibit B to WWR's Answer, ECF No. 69-3.  Because the state court answer was filed over one year before the instant matter, the Whittikers cannot show that they acted diligently, yet failed to discover facts giving

---

[23] The state foreclosure action against the Whittikers was filed on December 1, 2006 and that against Kimball was filed May 25, 2005.

[24] The Whittikers claim not to have known that their attorney in the state foreclosure action alleged a violation of the FDCPA as its Eighth Defense in answer to the foreclosure claim. *See* ECF No. 69-3, Exhibit B to WWR Answer to First Amended Complaint.§ 11.  Even if taken as true, the Whittikers appears to have litigated the FDCPA violation that in state court.

rise to their FDCPA claim.[25]  In sum, the record establishes that the Whittikers knew of the alleged FDCPA violation well within the statute of limitations period.  Therefore, there is no basis for equitable tolling.

### b.  Kimball Violated the Statute of Limitations

Kimball's foreclosure suit ended with a default judgment in favor of DBNTC.  Plaintiffs offer no persuasive extenuating circumstances to justify tolling the statute of limitations for an additional two years after the filing date of the state court action against Kimball and the Court found none in its review of the record.  Therefore, Kimball's FDCPA claim is also time-barred.  *See Graham-Humphreys, 209 F.3d at 561* (statute of limitations are to be observed "[i]rrespective of whether the plaintiff had the benefit of legal counsel.")

### 3.  Jurisdiction over Remaining State Law Claims

Given that each of the plaintiffs have failed to state a claim under the FDCPA, which is the only federal claim, the Court may decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.[26]  *See Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1254-55 (6th Cir.1996)* ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing

---

[25] Plaintiffs' Sur-Reply acknowledges the Whittiker's state-court FDCPA claim but begs the Court's pardon because of possible malfeasance on the part of the Whittikers' then attorney, John S. Brooking.  The Court is sympathetic but not persuaded that equitable tolling is justified given that FDCPA was pled as a defense and the matter of DBNTC's standing as a real party in interest was litigated and ruled upon in favor of DBNTC by Judge Russo.

[26] This Court declines to decide Defendants' alternative arguments for dismissal of the Plaintiffs' sole  federal claim. As stated above, Defendants also argue that Plaintiffs' FDCPA claim should be dismissed for several reasons, including *res judicata*, collateral estoppel, statute of limitations and the *Rooker-Feldman* and *Younger* doctrines.  DBNTC (as stated above) also argues that it is not a "debt collector" as defined by the FDCPA and, therefore, Count One must fail.

supplemental claims.")

This Report recommends that the Court decline jurisdiction over the remaining claims in the First Amended Complaint.  *See also Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir.2001) ("In fact, the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment."); *See also United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well.")

### IV. Conclusion

For the foregoing reasons, the Court recommends (1) granting each of the defendants' motions to dismiss as to Count One, Plaintiffs' federal claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e (ECF No. 75; ECF No. 70; ECF No. 72; ECF No. 74) ; (2) dismissing without prejudice Plaintiffs' remaining state law claims (Counts Two and Three); and (3) granting DBNTC's Request for Judicial Notice. (ECF Nos. 76 and 92-2.)

*/s/ Benita Y. Pearson*
Benita Y. Pearson
U.S. Magistrate Judge

Date: January 22, 2009

OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

24

25